IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAQUEL FLOYD,

Plaintiff;

vs.

MHM HEALTH PROFESSIONALS, LLC
d/b/a CENTURION HEALTHCARE,

Defendant.

CIVIL DIVISION

Docket No.:

**COMPLAINT IN CIVIL ACTION**

Filed on behalf of Plaintiff:
RAQUEL FLOYD

Counsel of Record for this Party:
Lorraine C. Harmer, Esquire
Harmer Law Firm, LLC
P.O. Box 21
Cochranville, PA 19330
Ph: (610)255-7113
lorraine@harmerlawfirm.com
Pa. I.D. #337242

**JURY TRIAL DEMANDED**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAQUEL FLOYD,<br><br>Plaintiff;<br>vs.<br><br>MHM HEALTH PROFESSIONALS, LLC<br>d/b/a CENTURION HEALTHCARE,<br><br>Defendant. | CIVIL DIVISION<br><br>Docket No.: |

**COMPLAINT IN CIVIL ACTION**

Plaintiff Raquel Floyd ("Plaintiff"), by and through undersigned counsel, brings this action against Defendant MHM Health Professionals, LLC d/b/a Centurion Healthcare ("MHM" or "Defendant"), and alleges as follows:

## I. NATURE OF THE ACTION

1. This action is brought to remedy claims of employment discrimination, sexual harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and race discrimination in violation of 42 U.S.C. § 1981 ("Section 1981").

2. Plaintiff seeks redress for discriminatory and hostile treatment during her employment with MHM, including sexually inappropriate and sexually charged conduct by her supervisor and psychiatric medical director, Defendant's failure to meaningfully investigate or correct that conduct after Plaintiff complained, disparate treatment based upon Plaintiff's race, and retaliation following Plaintiff's complaints and opposition to the conduct.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

3. Plaintiff, a Black woman, was subjected to disparate treatment, including heightened scrutiny, belittling and undermining conduct, and adverse treatment by her supervisor, Adam Glushakow ("Glushakow"), in circumstances that differed from the treatment of similarly situated White employees.

4. Plaintiff's Black coworker, Brandee Dukes ("Dukes"), who held the same position, was likewise subjected to heightened scrutiny and mistreatment by Glushakow. The treatment of Plaintiff and Dukes, together with the differing treatment of similarly situated White practitioners, supports an inference of discriminatory treatment based on race.

5. Plaintiff repeatedly raised concerns regarding Glushakow's treatment of her and the workplace environment. Those concerns were not meaningfully addressed. After Plaintiff escalated her concerns to human resources ("HR") and management during January and February 2025, MHM placed her on a Performance Improvement Plan ("PIP") and subjected her to heightened scrutiny, including one-on-one meetings and weekly observations with Glushakow.

6. In approximately the second week of March 2025, during the first such required one-on-one meeting under the PIP, Glushakow engaged in unwelcome sexually charged and sexually inappropriate discussions concerning coworkers and other personnel. Plaintiff objected to the discussions and thereafter repeatedly requested that communications with Glushakow remain professional and that another employee or third party be present during one-on-one meetings.

7. Through March and April 2025, Plaintiff continued to complain about Glushakow's conduct and objected to meeting with him alone because of his prior inappropriate conduct.

8. On **May 21, 2025**, after further incidents involving Glushakow and Plaintiff's coworker, Plaintiff continued to object to meeting with Glushakow alone because of his prior sexually inappropriate conduct and her resulting lack of trust in him. Glushakow thereafter **escalated the**



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

**matter to HR**. Plaintiff was directed to attend an HR meeting on May 22, 2025. After Plaintiff called out on May 22, 2025, HR told her not to return to work until after meeting with HR.

9. On **May 27, 2025**, the next workday, Plaintiff participated in the HR meeting. During that meeting, Plaintiff explained that her concerns about and lack of trust in Glushakow arose from his prior sexually inappropriate conduct and her repeated efforts to have MHM address that conduct. Rather than investigate Plaintiff's complaint or take corrective action as contemplated by MHM's own policies, **MHM terminated Plaintiff's employment** during the meeting, stating that Plaintiff's lack of trust in Glushakow and his unwillingness to continue collaborating with her were the reasons for the termination.

10. MHM's stated reason was pretextual. Plaintiff's employment record does not support the later representation that she was terminated because of poor performance. To the contrary, Plaintiff had received positive performance feedback, a raise, additional work, and continued approval to serve as a preceptor to RN students. She continued to be approved for additional work throughout the duration of the PIP. The PIP itself also relied on historical matters that had not previously resulted in formal discipline, notwithstanding Plaintiff's prior positive performance history.

11. Plaintiff subsequently learned that coworkers were being told that she had been terminated because of poor performance. The discrepancy between the reason given to Plaintiff at termination and the explanation later given to coworkers further supports an inference that MHM's stated reasons were pretextual.

12. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, seeking redress for discrimination based on race and sex, sexual harassment and hostile work environment, and retaliation for opposing and reporting



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

unlawful conduct. Plaintiff seeks declaratory, injunctive, and equitable relief; back pay, front pay, lost benefits and other economic damages; compensatory and punitive damages to the extent permitted by law; attorneys' fees and costs; and all other appropriate relief pursuant to governing law.

## II. JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over Plaintiff's claims arising under Title VII, and 42 U.S.C. § 1981 pursuant to 28 U.S.C. §§ 1331 and 1343, and over Plaintiff's Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3).

14. This Court has personal jurisdiction over MHM because MHM conducts business and maintains employment operations in Pennsylvania and in this District and because the acts and omissions giving rise to Plaintiff's claims occurred in this District.

15. Pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b), venue is proper in this District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III. PARTIES

16. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

17. Plaintiff Raquel Floyd is an adult female and a resident of Bucks County, Pennsylvania. At all relevant times, Plaintiff was employed by MHM and worked as a psychiatric mental health nurse practitioner at SCI Phoenix, a maximum-security state correctional institution for male inmates in Collegeville, Pennsylvania, under a contract between MHM and the Pennsylvania Department of Corrections ("DOC"). At all relevant times, Plaintiff was an employee of MHM within the meaning of Title VII.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

18. Defendant MHM Health Professionals, LLC d/b/a Centurion Healthcare is a Delaware limited liability company registered to do business in Pennsylvania as a foreign limited liability company. MHM's principal address is 21251 Ridgetop Circle, Suite 150, Sterling, Virginia 20166. MHM contracts with the DOC to provide psychiatric services to inmates and was Plaintiff's employer at all relevant times.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

19. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

20. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

### a. Plaintiff's Allegations are Timely-Administratively-Filed

21. On May 23, 2025, Plaintiff initially submitted an Inquiry to the EEOC concerning the same allegations and circumstances underlying this action. The EEOC advised Plaintiff that the inquiry could not proceed against both MHM (d/b/a Centurion Healthcare) and SCI Phoenix and that Plaintiff needed to select one entity. Plaintiff proceeded against MHM (d/b/a Centurion Healthcare) as advised because MHM was her employer while she worked at SCI Phoenix.

22. Plaintiff thereafter completed and submitted her Charge of Discrimination against MHM, which the EEOC confirmed as received on December 2, 2025.

23. In assessing the timeliness of an administrative filing, the Supreme Court has differentiated between "discrete acts" and "hostile work environments." For discrete acts, which are "easy to identify" and include "termination, failure to promote, denial of transfer, or refusal to hire," parties must file charges within the statutory timelines or "lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-16 (2002).



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

24. Under Title VII, a charge alleging a discrete unlawful employment practice must generally be filed with the EEOC within 300 days of the alleged unlawful employment practice where, as here, the alleged discrimination occurred in Pennsylvania, a jurisdiction with a state fair employment practices agency authorized to address employment discrimination claims. *See* 42 U.S.C. § 2000e-5(e)(1). The 300-day federal charge-filing period applies to federal Title VII notwithstanding that Plaintiff's EEOC charge was not dual or separately filed by Plaintiff with the PHRC. *See Dubose v. District 1199C*, 105 F. Supp. 2d 403, 411 (E.D. Pa. 2000).

25. Plaintiff's retaliation claim is within the scope of the factual allegations in the Charge. The Charge arose from the same underlying facts and circumstances alleged herein, including Plaintiff's complaints concerning discriminatory and harassing treatment and the adverse employment action that followed. Plaintiff's retaliation claim is therefore based on conduct within the scope of, and reasonably related to, the allegations presented to the EEOC.

26. Plaintiff's termination, placement on and extension of the PIP, removal from work, and other alleged adverse employment actions occurring on or after February 5, 2025, fall within 300 days of the December 2, 2025 EEOC filing. To the extent Plaintiff challenges earlier conduct as part of a hostile work environment, that conduct is also timely to the extent at least one act contributing to the hostile work environment occurred within the applicable filing period.

**b. Continuing Violation as to Hostile Work Environment**

27. Hostile work environments, by contrast, are made up of separate acts; even if the acts are not actionable in their own right, they may collectively comprise a discriminatory employment practice. *Nat'l R.R. Passenger Corp.* at 115-117. Because a hostile work environment "cannot be said to occur on any particular day," plaintiffs may recover for acts that predate the statutory period if the acts are part of a "continuing violation." *Id.*



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

28. To invoke the continuing violation doctrine, a plaintiff "must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable [300 day] limitations period. *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165-166 (3d. Cir. 2013).

29. The Third Circuit has directed district courts to consider "subject matter" (whether the violations constitute the same type of discrimination) and "frequency" (whether the conduct involved similar conduct by the same individuals, suggesting a persistent, ongoing pattern) when distinguishing continuing violations from isolated incidents. *Id.* at 166.

30. As described more-fully below, Plaintiff alleges a continuing course of conduct involving Glushakow that extended into the statutory period.

31. The conduct that she describes as a hostile environment includes repeated unwelcome conduct by the same individual – Glushakow – that began as early as the summer of 2023 and continued into the statutory period. Plaintiff alleges that at least one act contributing to the alleged hostile work environment occurred within the 300-day filing period, including Glushakow's sexually inappropriate conduct in March 2025 during the one-on-one meeting. Plaintiff thereafter repeatedly objected to and complained about that conduct and requested that future interactions with Glushakow remain professional and include another employee or third-party witness.

32. Plaintiff therefore alleges that the earlier conduct, to the extent otherwise outside the applicable limitations period, forms part of the same continuing course of conduct as the timely acts described herein. Plaintiff separately alleges that the PIP, its extension, removal from work, and termination constitute discrete adverse employment actions supporting her retaliation and discrimination claims.

**c. Plaintiff Timely Commenced this Action**

33. Plaintiff received her Notice of Right to Sue from the EEOC on June 2, 2026.

34. Plaintiff commenced this action within ninety (90) days of receipt of this notice.

35. Plaintiff has satisfied the applicable administrative exhaustion requirements for her claims under Title VII.

36. Plaintiff's claims under 42 U.S.C. § 1981 are not subject to an administrative exhaustion requirement.

## V. FACTUAL ALLEGATIONS

37. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38. From March 20, 2023, through May 27, 2025 (the "Term of Employment"), Plaintiff was employed by MHM as a psychiatric mental health nurse practitioner at SCI Phoenix.

**a. Plaintiff was a Competent and Dedicated Employee**

39. Throughout the Term of Employment, Plaintiff consistently demonstrated excellent performance and dedication to MHM. Plaintiff performed her job duties and responsibilities in a highly competent manner and routinely received positive feedback.

40. Plaintiff's 2024 performance evaluation noted her making quota, being on time, and that things were going well. She received a raise because of her positive performance.

41. Beginning about September 2024, Plaintiff was approved to serve as a preceptor (supervisor) for Registered Nurse ("RN") students completing their clinicals at SCI Phoenix. Between February 7, 2025, and May 2025, Plaintiff served as a preceptor for two RN students.

42. In fact, Plaintiff was successfully serving as a preceptor when MHM removed her from work, *five days before MHM terminated Plaintiff.*



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

43. Although Plaintiff was originally hired to work about 30 hours per pay period, she was routinely approved for additional hours, typically working about 80 to 110 hours per pay period.[1]

44. In fact, on or about May 18, 2025 – *nine days before she was terminated*– Plaintiff received a handwritten card from William Rossnock, MHM Program Manager, that said, "Thanks for all you do at [MHM] and picking up extra shifts… Continue to Grow!"

45. Before objecting to and reporting her supervisor's discriminatory conduct to MHM management and HR, Plaintiff had not been disciplined, reprimanded, coached, or put on a PIP.

46. Before objecting to and reporting her supervisor's unwelcome sexually explicit and sexually charged verbal conduct to MHM management and HR, Plaintiff had not been removed from work or terminated from her employment.

**b. MHM's Prohibitions Against Discrimination, Harassment, and Retaliation**

47. MHM, through its Business Ethics and Code of Conduct & Employee Handbook (the "Code"), expressly prohibited discrimination, harassment and retaliation.

48. The Code expressly required the immediate reporting of all incidents of discrimination, harassment, and retaliation, prohibiting retaliation against any individual who made a good-faith report of discrimination or harassment or participated in an investigation of such a report.

49. The Code characterized retaliation for reporting harassment or discrimination as a serious violation subject to discipline, including removal and termination. The Code specifically provided that, when the alleged conduct involved an employee's supervisor, the employee should notify HR.

---

[1] By way of further response, Plaintiff's assigned work hours were on Mondays, Tuesdays, and Wednesdays. In addition, Plaintiff routinely approved picked up extra work hours in Thursday, Saturdays, and Sundays.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

50. The Code further required MHM's HR Department to investigate reported allegations of harassment, discrimination, or retaliation promptly, thoroughly, and impartially, and stated that misconduct brought to MHM's attention would be addressed promptly and appropriately.

51. The Code defined sexual harassment to include unwelcome verbal conduct of a sexual nature when such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. The policy further identified verbal abuse of a sexual nature, sexual jokes and innuendo, insulting or obscene comments or gestures, and other verbal conduct of a sexual nature that would reasonably be considered offensive or harassing as examples of prohibited conduct.

52. Plaintiff's complaints to HR, Glushakow, Rossnock, and Renberg therefore placed MHM on notice of conduct expressly addressed by MHM's own policies and of Plaintiff's objections to and concerns regarding that conduct.

53. HR, Glushakow, Rossnock, and Renberg therefore had actual knowledge of Plaintiff's complaints and the circumstances underlying them before Plaintiff's termination.

**c. Disparate Treatment Based on Race**

54. During her employment, Glushakow was Plaintiff's supervisor and the psychiatric medical director at SCI Phoenix. Glushakow exercised supervisory authority over Plaintiff regarding Plaintiff's performance, clinical collaboration, working conditions, and employment.

55. Plaintiff is Black.

56. MHM and Glushakow were aware that Plaintiff is Black throughout her employment.

57. About July 2023, a meeting was held with Plaintiff, her practitioner colleague Brandee Dukes ("Dukes"); another practitioner colleague; Glushakow; and Bill Rossnock, MHM Program Manager ("Rossnock"). Rossnock had supervisory and/or managerial responsibilities



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

concerning Plaintiff and the psychiatric department at SCI Phoenix. Rossnock was next up Plaintiff's reporting chain of command over Glushakow.

58. During her employment, Plaintiff was subjected to heightened scrutiny, repeated criticism, belittling, and undermining conduct by Glushakow that caused her to feel that she was being treated as incompetent, unqualified, and incapable rather than as a professional colleague. Other co-workers informed Plaintiff that Glushakow was undermining and talking negatively about Plaintiff to them – at first colleagues from the psychology department, then also a nurse co-worker and Dukes. Notwithstanding, Glushakow did not discuss these concerns with Plaintiff directly. Plaintiff alleges that this disparate and differential treatment was because of her race.

59. Plaintiff's treatment differed from that of similarly situated White employees. Three White practitioners who held comparable positions and were subject to Glushakow's supervision – one woman and two men – were not subjected to the same level of scrutiny, belittling, or disparaging treatment. Plaintiff's Black coworker, Dukes, was also subjected to heightened scrutiny and mistreatment by Glushakow.[2]

60. The disparate treatment of Plaintiff and the treatment of the identified White comparators, together with the other circumstances alleged herein, supports an inference that Plaintiff was treated less favorably because of her race.

61. Plaintiff nevertheless attempted to address these issues professionally and directly and sought clarification, guidance, and a healthier working relationship with Glushakow and MHM management.

### d. Plaintiff's Complaints Regarding Glushakow's Conduct and MHM's Failures to Meaningfully Respond

[2] Dukes, *pro se*, filed suit against MHM. *See Dukes v. MHM Servs., Inc.*, No. 2:26-cv-04756 (E.D. Pa. filed 2026).

62. Throughout January 2025, after experiencing problems with Glushakow for more than a year, Plaintiff raised concerns about his conduct and the conditions of her workplace directly to Glushakow, Rossnock, and HR. At that time, Plaintiff complained about the manner in which Glushakow treated and communicated with her, including what she perceived as belittling, criticism, favoritism, and other inappropriate workplace conduct. Plaintiff also raised concerns regarding patient-care decision-making, inconsistent direction, communication, teamwork, favoritism, division within the department, and Glushakow's interactions with her and other members of the psychiatric team.

63. These complaints concerned Plaintiff's working conditions and Glushakow's management and communication practices. Plaintiff sought management intervention and a professional and constructive working relationship. Plaintiff specifically requested that Glushakow communicate concerns directly to her rather than discussing her performance or alleged mistakes with other employees.

64. On or about January 21, 2025, Plaintiff and Dukes spoke with Rossnock concerning their complaints about Glushakow and the problems within the psychiatry department. Plaintiff explained her concerns to Rossnock, and Dukes separately expressed her concerns. Plaintiff and Dukes told Rossnock that they needed to speak with Glushakow about the issues before matters became worse. Plaintiff had already spoken directly with Glushakow about the issues. Rossnock stated that he would speak with Glushakow and get back to Plaintiff/Dukes. Plaintiff twice emailed Rossnock seeking an update but received no timely response.

65. MHM failed to meaningfully investigate, intervene, or take corrective action. Glushakow subsequently participated in and materially influenced adverse employment actions taken against both Plaintiff and Dukes following their complaints concerning his conduct.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

**e. Plaintiff Escalates Her Complaint to Upper Management**

66. On February 12, 2025, Rossnock acknowledged to Plaintiff that he had not spoken with Glushakow about Plaintiff's raised concerns. Upon information and belief, Rossnock did not escalate Plaintiff's concerns to HR in accordance with typical reporting practices.

67. On February 16, 2025, Plaintiff therefore escalated her concerns further up the chain of command to Ingrid Renberg, MHM Regional Medical Director ("Renberg"). Renberg had management responsibility over the relevant operations and personnel at SCI Phoenix.

68. Plaintiff's written complaint to Renberg was concerning the continuing workplace problems and expressly described the increasingly intolerable atmosphere in the psychiatry department. Plaintiff explained that she had previously complained to Glushakow and Rossnock, that her concerns had not been adequately addressed, and that the workplace atmosphere had become increasingly intolerable. Plaintiff sought management intervention and requested assistance in achieving a healthier workplace.

69. This was part of her continuing effort to obtain management intervention concerning the conditions of her employment and Glushakow's conduct. Plaintiff described an ongoing pattern of workplace issues, her repeated efforts to have management address them, and that management had failed to meaningfully address the issues.

70. On February 20, 2025, Plaintiff again wrote to Renberg and Rossnock, explaining that she had previously raised her concerns with Glushakow and management and had received no meaningful follow-up. Plaintiff stated that she wanted clarity regarding her expectations, fair treatment, and a healthy working environment and again requested that management address the problems she had repeatedly brought to its attention.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

71. These complaints placed MHM management on actual notice of Plaintiff's concerns regarding Glushakow and the workplace environment before the adverse employment actions alleged below. MHM had actual knowledge that Plaintiff had repeatedly raised concerns regarding Glushakow, his treatment of her, and the conditions of her workplace.

72. At all relevant times, Glushakow, Rossnock, and Renberg acted within the scope of their employment and/or agency with MHM and participated in or had knowledge of the conduct alleged herein to the extent specifically described above.

**f. Escalated Retaliatory Conduct and Suspect PIP**

73. On February 24, 2025, approximately *four days* after Plaintiff's February 20, 2025 written complaint to Renberg and Rossnock, Plaintiff was placed on a PIP by Glushakow. The PIP identified alleged deficiencies in four broad categories: Clinical Aptitude; Attention to Detail; Documentation and Prescribing Practice; and Policy and Procedures. However, the PIP relied upon a series of alleged performance deficiencies dating back to April 29, 2024, through January 16, 2025. These incidents had not previously been presented to Plaintiff as grounds for formal discipline or placement on a PIP.

74. MHM did not impose comparable formal discipline based upon those historical matters before Plaintiff began raising and escalating complaints concerning Glushakow and the workplace environment. Instead, these prior incidents were elevated into a formal performance process only after Plaintiff escalated her complaints about Glushakow's conduct and sought intervention by upper-level management.

75. The circumstances surrounding the PIP are also inconsistent with Plaintiff's documented employment history. Before the PIP, Plaintiff received a positive performance evaluation and a



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

raise based upon her performance. She was approved to serve as a preceptor for RN students and routinely worked substantial additional hours beyond her originally scheduled hours.

76. The timing of the PIP was particularly close. Plaintiff submitted her written complaint to Renberg on February 20, 2025. Plaintiff was placed on the PIP *four days later*, on February 24, 2025. This temporal proximity, together with MHM's knowledge of Plaintiff's complaints and her prior positive performance history, supports an inference that the PIP was imposed, at least in part, in retaliation for her protected opposition and complaints.

77. Plaintiff alleges that the PIP was imposed, at least in part, because she had complained about Glushakow's conduct, opposed his inappropriate conduct, and sought management intervention concerning the workplace environment.

78. Plaintiff disputes Defendant's characterization of the matters identified in the PIP and alleges that the PIP selectively relied upon historical events and criticisms in a manner intended to discredit Plaintiff and establish a purported performance-based justification for subsequent adverse employment action.

**g. Glushakow Engages in Sexually Inappropriate Conduct Toward Plaintiff**

79. The PIP introduced by Glushakow required Plaintiff to meet with Glushakow for regular one-on-one meetings. Glushakow was also to conduct weekly observations of Plaintiff. The PIP therefore increased the frequency of direct one-on-one interactions between Plaintiff and Glushakow.

80. In approximately the second week of March 2025, during the first such required one-on-one meeting under the PIP, Plaintiff went to meet with Glushakow in his office. During that interaction, Glushakow shifted the conversation from patient care to unwelcome inappropriate



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

and sexually charged discussions concerning alleged sexual relationships and sexual encounters involving Glushakow, Plaintiff's co-workers, and other employees at SCI Phoenix.

81. Specifically, Glushakow discussed rumors that he and Dukes (his direct-report) were having an affair (which Dukes refutes). Glushakow then spoke about another staff member at SCI Phoenix having an affair with her boss and stated "that's why she gets what she wants around here." Glushakow went on to engage in additional sexually charged and sexually inappropriate discussions concerning personnel.

82. Because Glushakow was Plaintiff's supervisor and psychiatric medical director, his sexually charged comments and discussions made Plaintiff uncomfortable and interfered with her ability to interact with him as a professional supervisor and collaborator. Plaintiff immediately objected to the discussions and told Glushakow that the discussions made her feel uncomfortable and disrespected. Glushakow responded, to the effect, "that's how things go on around here."

83. Plaintiff thereafter reported and raised concerns regarding Glushakow's sexually inappropriate conduct with management, including Rossnock, and requested that future interactions with Glushakow occur with another employee present. Plaintiff's objection to Glushakow's sexually inappropriate conduct and her requests for management intervention constituted opposition to conduct that Plaintiff reasonably believed was prohibited by Defendant's anti-harassment policy and applicable law. Defendant thereby received notice of Plaintiff's opposition to and complaints concerning Glushakow's sexually inappropriate conduct.

84. Plaintiff had to repeatedly request that communications with Glushakow remain professional, centered only around legitimate work-related topics, and that another employee or third party be present during any required one-on-one meetings with Glushakow.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

85. Plaintiff believed that the sexually charged and sexually inappropriate conduct was directed toward and/or imposed upon her because she was a woman and that she would not have been treated in the same manner if she were male.

86. This harassment, together with Defendant's subsequent failure to meaningfully address it and the retaliation that followed Plaintiff's objections and complaints, caused Plaintiff emotional distress and other non-economic harm.

87. This harassment would detrimentally affect a reasonable person in like circumstances.

**h. Glushakow Apologizes to Plaintiff but Conduct and Retaliatory Treatment Continue**

88. On or about March 12, 2025, Glushakow sent Plaintiff a written email responding to concerns she had raised regarding his conduct. In that email, Glushakow apologized to Plaintiff, agreed with her that he should speak to her directly in the future, and stated that he would make every effort to do so. Glushakow's written apology confirmed that Plaintiff had raised legitimate concerns regarding his manner of communicating with and about her and that he acknowledged at least some responsibility for the conduct about which she had complained.

89. During the PIP period, Glushakow acknowledged deficiencies in Plaintiff's training and supervision. Among other things, he told Plaintiff that he had failed her, that her orientation when she began working at SCI Phoenix had not been the best, and that he could have done better in training her. These admissions provide context for the performance deficiencies later attributed to Plaintiff and support an inference that the PIP did not fairly reflect the circumstances of Plaintiff's training and supervision.

90. Notwithstanding the acknowledgment and apology, the conduct about which Plaintiff had complained continued. Glushakow continued the PIP and the heightened scrutiny of Plaintiff. MHM's decision to continue escalating the performance process despite Glushakow's



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

acknowledgment of shortcomings in his own training and supervision further supports an inference that the PIP was being used, at least in part, as a retaliatory mechanism and to create a purported performance-based justification for subsequent adverse employment actions.

91. Plaintiff continued to work substantial additional hours during the PIP period. Plaintiff questioned why Defendant continued to request and approve overtime if her performance was sufficiently deficient to warrant the formal performance process. Rossnock laughed in response rather than providing a substantive explanation.

92. The PIP was thereafter continued and extended beyond the approximately 4-6 week period Plaintiff had initially been told to expect. Defendant continued to subject Plaintiff to heightened scrutiny and performance-review interactions, including interactions with Glushakow, notwithstanding Plaintiff's objections to meeting with him alone and her repeated requests that another employee or third party be present due to his prior sexual-based conduct.

**i. Further Complaints Regarding Sexually Inappropriate Conduct**

93. On April 14, 2025, Plaintiff and Rossnock exchanged emails regarding Glushakow's sexually inappropriate discussions and ongoing workplace concerns. Plaintiff questioned why Glushakow had shared alleged sexual information and allegations concerning other employees with her, including information concerning an alleged affair involving Dukes. Rossnock replied that Glushakow would talk directly to Dukes about the rumors, and confirmed the rumors related to Dukes were false. Plaintiff reiterated that she only wanted to interact with Glushakow on a professional level about patient level care because he continued to discuss unrelated topics.

94. About later that week, a meeting was held with Plaintiff, Dukes, Glushakow, and Rossnock. At that meeting, Glushakow said Plaintiff took the sex-based comments out of context, he didn’t mean anything by it, and it was all a “joke.” Plaintiff was not amused and saw



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

nothing funny about Glushakow's inappropriate conduct. During that meeting, Glushakow acknowledged that he was supposed to have discussed the alleged rumor concerning himself and Dukes with Dukes, rather than with Plaintiff. This acknowledgment confirmed that the sexually charged discussion and disclosure of personal sexual information to Plaintiff was inappropriate and unrelated to any legitimate employment purpose.

95. During the same meeting, Plaintiff reiterated that she did not trust Glushakow and did not want to meet with him alone unless there was a witness present. Plaintiff requested that another employee or third party be present during future interactions with Glushakow because of his sexually inappropriate conduct and her resulting discomfort and lack of trust. Dukes likewise expressed concern about meeting with Glushakow alone. Dukes became extremely upset and was crying during the meeting.

96. The PIP, which Plaintiff had been told would last approximately four to six weeks, was extended because of Glushakow's schedule and inability to adhere to his evaluation requirements under the PIP – even though Glushakow and Rossnock both expressed to Plaintiff that she was doing a good job.

97. At the time the PIP was extended, Rossnock also asked Plaintiff to pick up overtime hours. Plaintiff asked Rossnock about why she was being asked to pick up extra hours while on a PIP with supposed performance issues. Rossnock only laughed.

98. On May 18, 2025, *nine days before Plaintiff's termination*, Rossnock gave Plaintiff a handwritten card thanking her for her work and for picking up extra shifts and stating, "Continue to Grow!" This contemporaneous recognition was consistent with Plaintiff's prior positive performance history and continued receipt of additional work.

### j. Plaintiff's Continued Opposition to Sexually Inappropriate Conduct and Escalation to HR



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

99. On May 21, 2025, Glushakow requested to meet separately and alone with Plaintiff and Dukes. Plaintiff again stated she would not meet with Glushakow alone and that a third-party witness was necessary because of his prior sexually inappropriate comments and conduct, and her resulting lack of trust in him.

100. Thereafter, Glushakow entered Dukes' office, closed the door, and began speaking with Dukes alone. Dukes emailed Plaintiff and told her that she did not feel safe being alone with Glushakow and asked Plaintiff to come to her office. Plaintiff went to Dukes' office in response to Dukes' request and to support her coworker after Dukes expressed that she did not feel safe meeting with Glushakow alone. When Plaintiff arrived, Glushakow was near the door and directed Plaintiff to leave so that he could continue speaking with Dukes alone. Plaintiff remained because Dukes had asked her to come to the office after expressing that she did not feel safe meeting with Glushakow alone. This incident further reinforced Plaintiff's concerns about meeting with Glushakow alone and her request that a third party be present during interactions with him.

101. Plaintiff's actions in responding to Dukes' request for assistance and supporting Dukes after Dukes expressed that she did not feel safe meeting alone with Glushakow were undertaken in response to concerns regarding the same sexually inappropriate and potentially harassing conduct Plaintiff had previously opposed and reported.

102. When Plaintiff returned to her office she locked her door. Glushakow came to Plaintiff's office stating he wanted to speak with her about a "personal matter." Plaintiff refused to meet with Glushakow alone and offered that the psychology co-worker in her office could stay as a witness. Glushakow said that co-worker could not stay but that Dukes could be a witness.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

103. Glushakow asked Plaintiff whether she trusted him and Plaintiff said she did not. Glushakow said to Plaintiff that if she doesn't trust him, then how could they work together. Plaintiff replied to the effect that's a good question and she did not know the answer. Plaintiff then asked Glushakow to leave her office so she could prepare for her next meeting which was scheduled to start in a few minutes. Plaintiff had to ask Glushakow to leave her office three times before he did so.

104. Plaintiff's refusal to meet with Glushakow alone was based upon his prior sexually inappropriate comments and discussions, her complaints concerning that conduct, his subsequent treatment of her, and her resulting lack of trust in him. Plaintiff's refusal was a reasonable response to the conduct she had previously opposed and reported to management.

**k. Plaintiff's Removal From Work and Termination**

105. Still on May 21, 2025, approximately five to six hours after Plaintiff's interaction with Glushakow, Plaintiff received an email from HR directing her to meet with HR on May 22, 2025. Plaintiff called out from work on May 22, 2025. HR thereafter informed Plaintiff that she could not return to work until she participated in a meeting with HR.

106. On May 27, 2025, Plaintiff's next scheduled workday, she participated in a Zoom meeting with HR representatives Brittany Harris and Soraya Pearson. Upon information and belief, the Zoom meeting was recorded by Defendant.

107. During the May 27, 2025 HR meeting, Plaintiff explained why she did not feel comfortable meeting with Glushakow alone. Plaintiff specifically explained that her lack of trust in Glushakow arose from his prior sexually inappropriate verbal conduct, her objections and complaints concerning that conduct, his subsequent treatment of her, and her repeated requests that another employee or third party be present during one-on-one interactions with him. Plaintiff



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

thereby reiterated to HR the sexual nature of the conduct she had previously opposed and reported and the reasons for her refusal to participate in unchaperoned interactions with him.

108. Rather than investigate Plaintiff's complaint or take corrective action as contemplated by Defendant's Code, HR terminated Plaintiff's employment during that same meeting. HR stated that Plaintiff was being terminated because she had told Glushakow that she did not trust him and because Glushakow did not want to continue collaborating with her. Thus, after Plaintiff reiterated to HR that her lack of trust resulted from Glushakow's sexually inappropriate conduct and her prior complaints concerning that conduct, **Defendant treated Plaintiff's protected opposition and resulting refusal to meet with Glushakow alone as grounds for termination.**

109. Plaintiff's termination was not based upon a legitimate, nondiscriminatory and non-retaliatory reason. Defendant's stated reason was pretextual because it converted Plaintiff's reasonable response to and opposition to Glushakow's sexually inappropriate conduct – including her request for a third-party witness and her refusal to participate in unchaperoned interactions with him – into a purported employment deficiency. The timing and circumstances of Plaintiff's termination, including her removal from work pending the HR meeting and her termination immediately after reiterating her complaints concerning Glushakow's sexually inappropriate conduct to HR, support an inference of retaliation.

110. Defendant's stated reliance upon Plaintiff's lack of trust in Glushakow and his unwillingness to continue collaborating with her further supports an inference of retaliation because Plaintiff's lack of trust was the direct result of Glushakow's sexually inappropriate conduct, Plaintiff's protected complaints concerning that conduct, and her efforts to avoid further



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

unchaperoned interactions with him. Defendant thereby treated Plaintiff's protected opposition and complaints concerning Glushakow's conduct as a basis for termination.

111. Defendant's stated reason for termination was also inconsistent with Plaintiff's employment history and Defendant's contemporaneous treatment of her. Before and during the PIP period, Plaintiff received positive performance recognition, was approved to serve as a preceptor, routinely worked substantial additional hours, and received a handwritten note thanking her for her work and willingness to pick up additional shifts. These circumstances further support an inference that the reason given for Plaintiff's termination was pretextual.

112. Plaintiff's termination was the culmination of escalating adverse treatment following her complaints concerning Glushakow's conduct and her efforts to obtain management intervention. Plaintiff was terminated after repeatedly opposing conduct she reasonably believed to be unlawful and after requesting that Defendant take reasonable steps to address the workplace conditions she had reported.

**l. Post-Termination Statements Concerning Reason for Plaintiff's Termination**

113. On or about May 30, 2025, after her termination, Plaintiff became aware of statements being made to others at SCI Phoenix concerning the reason for her termination. Plaintiff was informed that a co-worker from the psychology department was stating that Plaintiff had been terminated because of poor work performance.

114. The statements concerning poor performance were inconsistent with the reason given to Plaintiff by HR for her termination and further support an inference that Defendant's stated reason for termination was pretextual. These statements adversely affected her professional reputation.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

115. As a direct and proximate result of Defendant's conduct, Plaintiff suffered loss of employment, lost wages and benefits, damage to her professional reputation, emotional distress, humiliation, and other economic and non-economic injuries in amounts to be established at trial.

116. Plaintiff subsequently outlined the underlying conduct and retaliation to the EEOC in her December 2, 2025 Charge of Discrimination and Retaliation wherein Plaintiff stated: "When I spoke up about Dr. Adam Glushakow's coming against me due to being dyslexic, black, and a woman, then he became sexually inappropriate. Management William Rossnock ignored it and then once I continued to complaint I got fired." Plaintiff does not assert a claim under the ADA in this action.

**COUNT I — TITLE VII RETALIATION**

117. Plaintiff incorporates the foregoing allegations by reference.

118. Title VII prohibits an employer from discriminating against an employee because the employee opposed a practice made unlawful by Title VII.

119. Plaintiff engaged in protected activity under Title VII when she opposed and reported conduct that she reasonably and in good faith believed constituted sex discrimination and sexual harassment.

120. Plaintiff's protected activity included her immediate objection to Glushakow's sexually inappropriate and sexually charged conduct during the March 2025 one-on-one meeting; her subsequent complaints to management concerning that conduct; her requests that the conduct cease; her requests that communications with Glushakow remain professional; her repeated requests that another employee or third party be present during one-on-one interactions with Glushakow because of his sexually inappropriate conduct; and her reiteration of those complaints to HR on May 27, 2025.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

121. Plaintiff's opposition was reasonable and undertaken in good faith.

122. MHM had knowledge of Plaintiff's protected activity through at least Glushakow, Rossnock, Renberg, HR personnel, and other involved management personnel.

123. Following Plaintiff's protected activity, MHM subjected Plaintiff to materially adverse actions, including continuing and extending the PIP, removing Plaintiff from work pending an HR meeting, and terminating her employment.

124. The temporal proximity between Plaintiff's complaints concerning Glushakow's sexually inappropriate conduct and the adverse actions that followed, together with MHM's knowledge of those complaints and the circumstances surrounding Plaintiff's termination, support a causal connection between Plaintiff's protected activity and the adverse employment actions.

125. MHM's stated reason for termination—that Plaintiff did not trust Glushakow and that Glushakow did not want to continue collaborating with her—was pretextual because Plaintiff's lack of trust resulted directly from the sexually inappropriate conduct she had opposed and reported and from her resulting request for a witness during one-on-one interactions.

126. MHM's later representation to coworkers that Plaintiff was terminated because of poor performance further supports an inference that the stated reason for termination was pretextual.

127. MHM therefore retaliated against Plaintiff because she opposed conduct made unlawful by Title VII.

128. As a direct and proximate result of MHM's retaliation, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, damage to her professional interests, and other compensable damages.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

## COUNT II: TITLE VII SEX DISCRIMINATION, SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

129. Plaintiff incorporates the foregoing allegations by reference.

130. Title VII prohibits an employer from discriminating against an individual with respect to the terms, conditions, or privileges of employment because of the individual's sex, including subjecting an employee to unwelcome sexual conduct that creates a hostile or offensive work environment. See 42 U.S.C. § 2000e-2(a)(1).

131. Plaintiff is a member of a protected class based on her sex.

132. Plaintiff is a woman and was an employee protected by Title VII.

133. During her employment, Plaintiff was subjected to unwelcome sexually charged and sexually inappropriate verbal conduct by Glushakow, her immediate supervisor and the psychiatric medical director for her employer.

134. During the first one-on-one meeting required under the PIP, Glushakow initiated discussions concerning alleged sexual relationships and encounters involving himself, Plaintiff's coworkers, and other personnel, including rumors concerning an alleged affair between Glushakow and Dukes and an alleged affair between another employee and her supervisor.

135. Glushakow also engaged in additional sexually charged discussions concerning other employees and personnel, including discussing alleged affairs and sexual relationships that had no legitimate work-related purpose.

136. Plaintiff immediately objected to the conduct, told Glushakow that the discussions made her feel uncomfortable and disrespected, and thereafter repeatedly requested that communications with him remain professional and that another employee or third party be present during one-on-one interactions.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

137. Plaintiff reported Glushakow's sexually inappropriate conduct to management, including Rossnock, and repeatedly requested management intervention and that future one-on-one interactions with Glushakow include another employee or third-party witness.

138. Despite Plaintiff's complaints, MHM failed to meaningfully investigate or correct Glushakow's conduct. Instead, MHM continued requiring Plaintiff to interact with Glushakow under the PIP and subjected her to continuing one-on-one interactions and heightened scrutiny.

139. On May 21, 2025, after Plaintiff again objected to meeting alone with Glushakow because of his prior sexually inappropriate conduct, Glushakow escalated the matter to HR. HR directed Plaintiff to attend a meeting on May 22, 2025. Plaintiff called out from work on May 22. HR thereafter instructed Plaintiff that she could not return to work until she participated in a meeting with HR.

140. On May 27, 2025, Plaintiff met with HR and explained that her refusal to meet with Glushakow alone and her lack of trust in him resulted from his prior sexually inappropriate verbal conduct and her repeated complaints about that conduct. Rather than investigate Plaintiff's sexual-harassment complaints or take corrective action, HR terminated Plaintiff's employment during that meeting, stating that Plaintiff's lack of trust in Glushakow and his unwillingness to continue collaborating with her were the reasons for the termination.

141. The circumstances surrounding Plaintiff's removal from work and termination further demonstrate the adverse effect of the harassment and MHM's failure to respond appropriately after receiving actual notice of Plaintiff's complaints.

142. The conduct was unwelcome and offensive, occurred in the context of a supervisory relationship, and interfered with Plaintiff's ability to interact with Glushakow as her supervisor and clinical collaborator. Plaintiff was detrimentally affected by the conduct,

including significant discomfort, humiliation, anxiety, and loss of trust in Glushakow. Plaintiff immediately objected to the sexually charged discussions, repeatedly requested that Glushakow's communications with her remain professional and work-related, and repeatedly requested that another employee or third party be present during one-on-one interactions with him. MHM received actual notice of Plaintiff's complaints and nevertheless failed to meaningfully investigate or correct the conduct. Considering the totality of the circumstances, including Glushakow's supervisory authority, the nature of the sexually charged conduct, Plaintiff's repeated objections and requests for corrective measures, MHM's knowledge of the conduct, and MHM's failure to meaningfully respond, Plaintiff alleges that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create a hostile or abusive working environment.

143. MHM had actual notice of Plaintiff's complaints concerning Glushakow's sexually inappropriate conduct and failed to take prompt, thorough, and appropriate corrective action, notwithstanding MHM's written policy requiring investigation and responsive action.

144. MHM therefore subjected Plaintiff to sex discrimination, sexual harassment, and a hostile work environment in violation of Title VII.

145. As a direct and proximate result of MHM's unlawful conduct, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, damage to her professional interests, and other compensable damages.

**COUNT III — TITLE VII RACE DISCRIMINATION**

146. Plaintiff incorporates the foregoing allegations by reference.

147. Title VII prohibits an employer from discriminating against an individual with respect to the terms, conditions, and privileges of employment because of race.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

148. Plaintiff is Black and therefore belongs to a class protected by Title VII.

149. Plaintiff was qualified for her position and successfully performed her duties, as reflected by her positive performance evaluation, raise, approval to serve as an RN-student preceptor, continued assignment of work, and approval for substantial additional hours.

150. Nevertheless, Plaintiff was subjected to heightened scrutiny, repeated criticism, belittling and undermining conduct, and other adverse treatment by Glushakow.

151. Plaintiff's treatment differed from that of similarly situated White employees, including three White practitioners who were not subjected to the same level of scrutiny, criticism, belittling, or disparaging treatment.

152. Plaintiff's Black coworker, Dukes, who held the same position was likewise subjected to heightened scrutiny and mistreatment by Glushakow.

153. The differing treatment of Plaintiff and Dukes, as compared with their White peers, together with the circumstances alleged herein, supports an inference that Plaintiff was subjected to disparate treatment because of her race.

154. MHM thereby deprived Plaintiff of equal terms, conditions, and privileges of employment because of her race, in violation of Title VII.

155. As a direct and proximate result of MHM's unlawful conduct, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, and other economic and non-economic damages recoverable under Title VII.

**COUNT IV — 42 U.S.C. § 1981 RACE DISCRIMINATION**

156. Plaintiff incorporates the foregoing allegations by reference.

157. Section 1981 prohibits racial discrimination in the making, performance, modification, and termination of contracts, including employment contracts.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

158. Plaintiff is Black and therefore is protected from racial discrimination under Section 1981.

159. Plaintiff had an employment relationship with MHM and was qualified to perform her job duties.

160. MHM subjected Plaintiff to disparate treatment in the performance and conditions of her employment, including heightened scrutiny, repeated criticism, belittling and undermining conduct, adverse treatment, and ultimately termination.

161. Plaintiff was treated differently from three similarly situated White employees who were not subjected to the same degree of scrutiny, criticism, belittling, or disparagement.

162. Plaintiff's Black coworker, Dukes, who held the same position was likewise subjected to heightened scrutiny and mistreatment, further supporting an inference of a racially discriminatory pattern of treatment by Glushakow.

163. The facts alleged herein support an inference that race was a but-for cause of Plaintiff's unequal treatment and deprivation of contractual employment rights and that Plaintiff was subjected to unequal terms, conditions, and privileges of employment because she is Black.

164. MHM's conduct was intentional and deprived Plaintiff of the same rights to make and enforce the employment relationship as were enjoyed by White employees. Plaintiff alleges that race was a but-for cause of the unequal treatment and deprivation of her contractual rights protected by Section 1981.

165. As a direct and proximate result of MHM's intentional racial discrimination, Plaintiff suffered economic and non-economic damages, including lost wages and benefits, emotional distress, humiliation, and other damages recoverable under Section 1981.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Raquel Floyd respectfully requests that this Court enter judgment in her favor and against Defendant MHM Health Professionals, LLC d/b/a Centurion Healthcare, and award the following relief:

a. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201(a) declaring that Defendant's conduct violated Title VII, including 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a), and violated Plaintiff's rights under 42 U.S.C. § 1981;

b. Award injunctive relief pursuant to Title VII § 706(g), 42 U.S.C. § 2000e-5(g), compelling Defendant to discontinue its unlawful practices of discrimination, sexual harassment, hostile work environment, and retaliation, and requiring Defendant to take appropriate measures to prevent and correct such conduct, including appropriate measures to monitor compliance with its obligations under Title VII and its anti-discrimination, anti-harassment, and anti-retaliation policies;

c. Award such injunctive and equitable relief as is appropriate to make Plaintiff whole and remedy the effects of Defendant's unlawful conduct, including prospective relief in lieu of reinstatement;

d. Award equitable relief pursuant to Title VII § 706(g), 42 U.S.C. § 2000e-5(g), requiring Defendant to make Plaintiff whole for all earnings and employment benefits she would have received but for Defendant's unlawful conduct, including, without limitation, back pay, front pay in lieu of reinstatement, lost wages, overtime, bonuses, and other lost benefits;

e. Award compensatory damages pursuant to 42 U.S.C. § 1981a(b)(3), to the extent applicable, for Plaintiff's past and future pecuniary losses, emotional pain and suffering,



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

inconvenience, mental anguish, loss of enjoyment of life, damage to her professional reputation, and other non-pecuniary losses, and to mold or apportion any verdict in excess of an applicable statutory damages cap as required by law;

f. Award punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), to the extent permitted by law, against Defendant for its malice or reckless indifference to Plaintiff's federally protected rights;

g. Award compensatory and punitive damages and all other relief available under 42 U.S.C. § 1981, to the extent permitted by law;

h. Award reasonable attorneys' fees and costs pursuant to Title VII § 706(k), 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 1988(b);

i. Award pre-judgment and post-judgment interest as permitted by law;

j. Award such other and further relief as this Court deems just, equitable, and appropriate.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the complaint.[3]

**HARMER LAW FIRM, LLC**

*By:* /s/ Lorraine C. Harmer
Lorraine C. Harmer, Esquire
P. O. Box 21
Cochranville, PA 19330
(610)255-7113
lorraine@harmerlawfirm.com

*Attorney for Plaintiff*

Dated: August 31, 2026

---

[3] Plaintiff's right to trial by jury on her Title VII claims is preserved pursuant to 42 U.S.C. § 1981a(c) and Fed. R. Civ. P. 38.



Doc ID: 282f32bafb46778848314df59dbe29b9b3cdd903

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAQUEL FLOYD, CIVIL DIVISION

Plaintiff; Docket No.:

vs.

MHM HEALTH PROFESSIONALS, LLC
d/b/a CENTURION HEALTHCARE,

Defendant.

**VERIFICATION**

I, Raquel Floyd, Plaintiff in the above-captioned action, hereby verify that I have read the foregoing Complaint and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

I understand that the statements made in this Verification are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

By: Raquel Floyd

Raquel Floyd, Plaintiff

Date: 08 / 31 / 2026